UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-212 (JRT/LIB)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DAVID BRIAN DONNELL, JR.,

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and defendant David Brian Donnell, Jr. (hereinafter referred to as the "defendant"), agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.   **Charges**. The defendant agrees to plead guilty to Count One of the Information, which charges the defendant with Murder in the Second Degree, in violation of 18 U.S.C. §§ 1111(a) and (b), 1151 and 1153(a). The defendant fully understands the nature and elements of the crime with which he has been charged. At the time of sentencing, the government agrees to move to dismiss the Indictment.



1

Initials: /s/

2. **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Count One of the Information. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

On or about July 27, 2021, in the State and District of Minnesota, and within the exterior boundaries of the Red Lake Indian Reservation, the defendant killed Ryan Bialke, a Red Lake Tribal Police Officer, with malice aforethought. The defendant is an enrolled member of the Red Lake Band of Chippewa Indians and an Indian for purposes of criminal jurisdiction pursuant to 18 U.S.C. § 1153(a).

Specifically, on the morning of July 27, 2021, the Red Lake Police Department (RLPD) received a call from a concerned party that Mr. Donnell, Jr. was distraught and suicidal. On the way to Mr. Donnell Jr.'s home, the RLPD officers learned that the defendant had an active tribal warrant. RLPD officers also received information that a child and another adult may be present in the home. The officers later learned that the defendant was, in fact, alone in the home.

At about 7:04 a.m., five RLPD officers, including RLPD Officer Ryan Bialke, responded to the defendant's residence, which is located within the State and District of Minnesota and within the exterior boundaries of the Red

2

Initials: 

Lake Indian Reservation. The RLPD officers were wearing their police uniforms and one arrived in a marked squad car. The RLPD officers first encountered the defendant on the outside porch of his home. One RLPD officer attempted to speak with the defendant, but the defendant went inside. The officer spoke with the defendant through a window and tried to get him to come out of the house. The defendant refused.

Concerned about the defendant's welfare and the welfare of others potentially in the home, officers made the decision to breach the door. Three officers, including Officer Bialke, formed a "stack"—a line of three officers—at the front door. Officer Bialke was first in the stack. Just as the officers breached the front door, the defendant began shooting at the officers with a Izhmash Saiga 7.62 caliber rifle. Four of the defendant's initial shots struck Officer Ryan Bialke, killing him almost instantly.

Approximately four minutes passed between the officers arriving on the scene and the defendant shooting Officer Ryan Bialke. After Officer Bialke was hit and fell to the ground, the four other RLPD officers—A.R., G.D., S.D., and C.N.—withdrew from the defendant's porch and into a nearby wooded area as defendant continued shooting. The defendant fired at least 22 shots in total at Officer Bialke and the four other RLPD officers.

Shortly after the shooting, the defendant fled his residence through a wooded area. He took the rifle with him. The defendant ran through brush to

3

Initials: 

his grandmother's home, who lives two properties west of the defendant. The defendant surrendered his rifle to his grandmother. A short time later, the defendant's mother arrived on the scene. The defendant's mother drove the defendant to the end of the driveway, where the defendant surrendered to law enforcement and stated he was sorry. Officers also cleared the defendant's residence and determined that, at the time of the shooting, he was alone in his home. Officers noted that the home looked chaotic with furniture thrown around and bullet holes in the door frame.

On July 27, 2021, the defendant provided a statement to law enforcement. The defendant confessed to the shooting and, among other things, expressed remorse for killing Officer Bialke.

The defendant admits that in killing Officer Bialke, he acted voluntarily, willfully, and with malice aforethought. The defendant makes no claim he was acting in self-defense or that he is in any way innocent of the charge of Murder in the Second Degree.

3. **Waiver of Indictment.** The defendant agrees to waive indictment by a grand jury on this charge and to consent to the filing of a criminal Information. The defendant further agrees to execute a written waiver of his right to be indicted by a grand jury on this offense.

4. **Waiver of Pretrial Motions.** The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this

4

Initials: 

case and has filed and argued pretrial motions. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing all motions previously filed as does the government.

5. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and,

Initials: 

if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

6.  **Additional Consequences.** The defendant understands that as a result of his conviction, he could be assessed the costs of prosecution and experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

7.  **Statutory Penalties.** The defendant understands that Count One of the Information (Murder in the Second Degree, in violation of 18 U.S.C. §§ 1111(a) and (b), 1151 and 1153(a)) is a felony offense that carries the following statutory penalties:

    a.  a maximum of life imprisonment;

    b.  a maximum supervised release term of five years;

    c.  a maximum fine of $250,000;

    d.  mandatory restitution to the victim of his crime;

    e.  costs of prosecution, imprisonment, and supervision, as defined in 28 U.S.C. §§ 1918(b) and 1920; and

    f.  a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

8.  **Revocation of Supervised Release.** The defendant understands that if he were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the

6

Initials: 

length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

9. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations:

   a. Base Offense Level. The parties agree that the base offense level is **38**. U.S.S.G. § 2A1.2.

   b. Specific Offense Characteristics. The parties agree that no specific offense characteristics apply.

   c. Chapter 3 Adjustments. The parties agree that the offense level should be increased by **6 levels** because the defendant, knowing or having reasonable cause to believe that Officer Ryan Bialke was a law enforcement officer, assaulted such officer during the course of the offense that created a substantial risk of serious bodily injury and, in fact, resulted in the officer's death. U.S.S.G. § 3A1.2(c)(1). The parties agree that the offense level should be increased by **2 levels** because the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation and/or prosecution by fleeing and removing the murder weapon from the scene. U.S.S.G. § 3C1.1. The parties agree that other than as provided herein, no other Chapter 3 adjustments apply.

   d. Acceptance of Responsibility. The Government agrees to recommend that the defendant receive a **2-level** reduction

7

Initials: 

for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the Government of his intention to enter a plea of guilty, the Government agrees to recommend that the defendant receive an additional **1-level** reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the Government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant cooperates with the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant move to withdraw his guilty plea after it is entered.

e. Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into **Criminal History Category I**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that while sentences resulting from tribal court convictions are not counted, they may be considered under § 4A1.3 (Adequacy of Criminal History Category). The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

8

Initials: *[signature]*

f.   Guidelines Range. If the adjusted offense level is **43**, and the criminal history category is I, the Sentencing Guidelines range is **life**.

**As set forth below, the parties agree to recommend a sentence between 405 months and life imprisonment.**

g.   Fine Range. The fine range is $50,000 to $250,000. U.S.S.G. § 5E1.2(c)(3).

h.   Supervised Release. The Sentencing Guidelines require a term of supervised release of at least 2 but not more than 5 years. U.S.S.G. § 5D1.2(a)(1).

10.   **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

11.   **Agreements as to Sentencing Recommendation.** The parties agree to allocute for a sentence between 405 months imprisonment and life

9

Initials: 

imprisonment. If the Court does not accept the sentencing recommendation of the parties, neither the defendant nor the government will have the right to withdraw from this plea agreement.

12. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the $100 special assessment.

13. **Restitution Agreement.** The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims. The defendant agrees that he owes restitution and agrees that the Court shall order him to pay restitution in an amount to be determined on or before the sentencing hearing to Officer Ryan Bialke's next of kin.

14. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees

10

Initials: [handwritten]

to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

15. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), any firearm with accessories and any ammunition involved in the violation charged in Count One of the Information, including specifically but not limited to the Izhmash Saiga 7.62 caliber rifle bearing serial number H04101057, together with ammunition.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and consents to the destruction of the firearm and ammunition.

11

Initials: 

The defendant further agrees to transfer any right, title, and interest he may have in the following firearms, ammunition, and accessories: a Browning shot gun, Model Citori, bearing serial number 18725HM153, a Harrington & Richardson, Model Pardner SB1, .410 gauge shotgun, bearing serial number NL343142, a Winchester, Model 97, 12 gauge shotgun, bearing serial number 904919, and a Winchester, Model 70 Ranger, .270 caliber rifle with scope, bearing serial number G1760336, together with ammunition, to an appropriate third-party.

16. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence, restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by the defendant of the substantive reasonableness of a term of imprisonment above 550 months' imprisonment. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The United States agrees to waive its right to appeal any sentence except the United States may appeal the substantive reasonableness of a term of imprisonment below 405 months' imprisonment.

Initials: 

The defendant has discussed these rights with his attorney. The defendant understands the rights being waived, and he waives these rights knowingly, intelligently, and voluntarily.

17. **Complete Agreement.** This, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

Date: 3/25/22

CHARLES J. KOVATS, JR.
Acting United States Attorney

BY: MELINDA A. WILLIAMS
JOSEPH S. TEIRAB
Assistant United States Attorneys

Date: 3/17/22

DAVID BRIAN DONNELL, JR.
Defendant

Date: March 17, 20222

MANNY K. ATWAL
Counsel for Mr. Donnell, Jr.

13

Initials: